UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAG JEWISH DIRECTORIES, INC.,<br><br>        Plaintiff,<br>v.<br><br>HEBREW ENGLISH YELLOW PAGES, INC.; YAAQOV AZARIA, a/k/a JACK AZARIA, a/k/a JACK GOLDBERG,<br><br>        Defendants. | Civil Action No. 09-33 (KSH)<br><br><u>OPINION</u> |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I.    INTRODUCTION**

In this trademark dispute concerning a Georgia business directory, defendants have moved pursuant to Rules 4(e) and 12(b)(2) of the Federal Rules of Civil Procedure to dismiss the amended complaint[1] [D.E. # 21] for lack of personal jurisdiction. Alternatively, defendants request that the Court transfer this matter pursuant to 28 U.S.C. §§ 1406(a) or 1404(a). For the reasons below, the Court agrees with defendants that it lacks personal jurisdiction over them. It concludes, however, that the most judicious remedy is to grant defendants' alternative request to transfer the case to the United States District Court for the Northern District of Georgia, Atlanta Division.

---
[1] All citations to "Compl." herein refer to the amended complaint [D.E. # 21].

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

As the parties are well-versed in the facts giving rise to this litigation, the Court need spend only a few moments discussing them here. Plaintiff DAG Jewish Directories, Inc. ("DAG") is a corporation formed under the laws of the State of New York, and has its principal place of business there, although it has a New Jersey office. Compl. ¶ 3. Defendant Hebrew English Yellow Pages, Inc. ("HEYP") is a Georgia corporation with its principal place of business located in the metropolitan Atlanta area. Compl. ¶ 4. Pursuant to a consent order entered in parallel litigation in Georgia state court (the "Georgia consent order"), HEYP has changed its corporate name to Atlanta Jewish English Business Guide, Inc. For continuity, however, the Court will continue to refer to defendant by the corporate name under which it was sued. Defendant Yaaqov Azaria ("Azaria") is the president of HEYP and is a resident of Georgia. Compl. ¶ 5.

DAG is the publisher of a semi-annual telephone directory ("DAG directory") serving the Jewish communities located in New York, New Jersey, Florida, and California. Compl. ¶ 6. DAG first published its directory in 1990, and earns revenue by selling advertising space within its pages. *Id.* Each edition of the DAG directory has been copyrighted, and is associated with various trademarks, most of which have been federally registered. Compl. ¶¶ 7-8. DAG alleges that one of the marks associated with its directory—"Hebrew English Yellow Pages"—is awaiting registration under a pending federal trademark application, and that it is protected by the common law in any event. Compl. ¶¶ 8-11.

On January 2, 1995, Azaria signed an employment agreement with Dapey-Assaf, Ltd. ("Dapey-Assaf"), a predecessor-in-interest to DAG. (Dapey-Assaf was formed in 1989, and merged into DAG Media, Inc. in 2000. DAG Media, Inc., in turn, merged with the present DAG

entity in 2006.). Compl. ¶ 14; Certification of Assaf Ran ("Ran Cert.") ¶¶ 3-5. The employment agreement, which contained an express New Jersey forum selection clause, prohibited Azaria from, *inter alia*, misusing any confidential information obtained through that employment, including intellectual property regarding the company's distribution method, business plans, employee training, and pricing. Compl. ¶¶ 14-17.[2] Azaria's employment terminated at Dapey-Assaf in 1996. Ran Cert. ¶ 58. The complaint does not allege that Azaria was required to (or did) maintain any contacts with New Jersey during his employment with Dapey-Assaf. For his part, Azaria declares that: (1) his employment with Dapey-Assaf took place exclusively in New York; (2) he has never conducted any business activity in New Jersey; and (3) his last visit to this state occurred in 1999, was of a personal nature, and during that time he engaged in no business activity of any kind. Affidavit of Yaaqov Azaria ("Azaria Aff.") ¶ 5. DAG does not dispute these declarations.

Azaria founded HEYP in 2008 in order to publish and distribute a directory in Georgia (the "HEYP directory") modeled after the DAG directory, which HEYP intended to name "Hebrew English Yellow Pages." Compl. ¶ 12-13. DAG filed suit in this Court on January 6, 2009 [D.E. # 1] seeking damages and emergent injunctive relief as a result of HEYP's plan to distribute its directory. Compl. ¶¶ 15, 17. The complaint asserted various causes of action under the federal Lanham Act, New Jersey statutory law, and the common law. Compl. ¶¶ 27-79. Specifically, DAG alleged that Azaria and his employees unlawfully utilized DAG's protected marks in seeking potential advertisement customers for the HEYP directory, and that the HEYP directory itself infringed DAG's marks by suggesting an affiliation with the DAG directory. Compl. ¶ 15. DAG further alleged that Azaria's use of a business model and customer

---

[2] A complete version of the employment agreement appears at Exhibit A to the Ran Certification.

3

procurement method that was identical or substantially similar to DAG's constituted unlawful misappropriation of proprietary business information, in violation of his 1995 employment agreement with Dapey-Assaf. Compl. ¶¶ 15-19. Finally, DAG averred that HEYP had breached its obligations under the Georgia consent order by continuing to misappropriate the marks that it had previously agreed not to use. Compl. ¶¶ 20-26.

HEYP asserts, and DAG concedes, that HEYP does no business in New Jersey, nor does it maintain offices, agents, or representatives within its borders.[3] The HEYP directory now at issue has and will only be distributed within the State of Georgia. Moreover, all of Azaria's and HEYP's actions taken in furtherance of publishing and distributing the HEYP directory occurred in the State of Georgia. The amended complaint does not allege that any of defendants' actions were either taken in or are directly connected to the State of New Jersey.

On January 6, 2009, the Court declined to issue the temporary restraints which DAG requested in its complaint [D.E. # 4].[4] Instead, it granted DAG limited discovery [D.E. # 4] and set a February 10, 2009 hearing date on DAG's motion to preliminarily enjoin the then-impending distribution of the HEYP directory. The Court subsequently denied DAG's renewed application (filed on January 8, 2009) for a temporary restraining order [D.E. # 6]. After oral argument on February 10, 2009, the Court orally denied DAG's motion for a preliminary injunction [D.E. # 30], and granted leave to HEYP to file the instant motion to dismiss or transfer this case [D.E. # 34]. On March 13, 2009, DAG again requested the Court to issue temporary

---

[3] The Court has been advised that Azaria has also formed a corporation under the laws of the State of Texas. It is unclear whether this corporation has undertaken any activity and if so, the nature and extent of that activity. The Court has not been presented with any further information regarding Azaria's contacts with Texas, which in any event have no bearing on resolution of the instant motion.

[4] The order was docketed on January 7, 2009.

4

restraints based on a disputed mark appearing on the cover of the HEYP directory [D.E. # 38], which the Court denied given the looming jurisdictional issue [D.E. # 41].

## III. DISCUSSION

### A. Legal Standards

#### 1. *Personal Jurisdiction*

A district court "may assert personal jurisdiction over a nonresident of the state in which [it] sits to the extent authorized by the law of that state." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir. 1987). The New Jersey long-arm statute extends to the outermost limits permitted by the Fourteenth Amendment's Due Process Clause. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). Thus, district courts in this state may exercise personal jurisdiction over nonresident defendants if they have established "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Personal jurisdiction over a defendant may arise under the Fourteenth Amendment without regard to the claim asserted by the plaintiff where the defendant's contacts with the forum are "systematic and continuous" (general jurisdiction), or where the claim asserted arises out of the defendant's limited contacts with the state (specific jurisdiction). *See Watiti v. Walden Univ.*, No. 07-4782, 2008 U.S. Dist. LEXIS 43217, at *5-6 (D.N.J. May 30, 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16 & nn.8, 9 (1984)).

To establish specific jurisdiction, the court must first determine whether defendants had the minimum contacts with the forum necessary for the defendant to have "reasonably

anticipate[d] being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, (1980) (citations omitted). What constitutes minimum contacts varies with the "quality and nature of defendant[s'] activity." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). In assessing the sufficiency of minimum contacts for personal jurisdiction, the Court must focus on the "relationship among the defendant[s], the forum, and the litigation." *Keeton v. Hustler,* 465 U.S. 770, 775 (1984). There must be at least "a single deliberate contact" with New Jersey that relates to the cause of action. *United States Golf Ass'n v. United States Amateur Golf Ass'n,* 690 F. Supp. 317, 320 (D.N.J. 1988).

Assuming minimum contacts have been established, the Court must then consider whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe*, 326 U.S. at 320). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. *World-Wide Volkswagen,* 444 U.S. at 292. To determine reasonableness, the Court considers the following factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering substantive social policies. *China Shipping (N. Am.) Agency Co. v. Lighthouse Trucking, Inc.*, No. 08-2368, 2009 U.S. Dist. LEXIS 7538 at *9-10 (D.N.J. Jan. 30, 2009).

Whether general or specific jurisdiction is asserted, a plaintiff must demonstrate by a preponderance of evidence that the defendant has "purposefully directed its activities toward the residents of the forum state, or otherwise 'purposefully avail[ed] itself of the privilege of

6

conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). Because the Court has not held an evidentiary hearing on the jurisdictional issue, DAG need only establish a *prima facie* case of personal jurisdiction, and is entitled to have all allegations in the complaint taken as true and factual allegations drawn in its favor. *Watiti*, 2008 U.S. Dist. LEXIS 43217, at *6-7 (quoting *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 316 (3d Cir. 2007)).

2. *Venue*

Two statutory provisions concern venue transfers. They read in pertinent part:

**Venue: Change of Venue**

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

\*   \*   \*

**Venue: Cure or Waiver of Defects**

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. §§ 1404(a), 1406(a). Transfers under the former provision "are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Lafferty v. Gito St. Riel*, 495 F.3d 72, 76, 79 n.8 (3d Cir. 2007). The latter "comes into play where plaintiff[] file[d] suit in an improper forum." *Id.* at 77 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995)). Where an issue regarding the Court's jurisdiction over the defendant's person exists,

7

however, the Court is authorized to transfer a case under either provision whether it has jurisdiction over the defendant or not.[5] *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964); *see also Lafferty*, 495 F.3d at 79-80 (discussing *Berkowitz*); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, (1962) (a court's lack of personal jurisdiction over defendant does not vitiate its power to transfer).

**B. Analysis**

*1. Personal Jurisdiction*

To begin with, DAG does not argue, nor could it, that general personal jurisdiction lies over defendants in New Jersey. Defendants' contacts with this forum, if any exist, come nowhere near systematic and continuous, making further inquiry unnecessary.

As for specific jurisdiction, DAG does not contend that either Azaria or HEYP have any current (let alone sufficient minimum) contacts with New Jersey. The only connection that the amended complaint draws between Azaria and this forum is the employment contract that Azaria signed as part of his employment with Dapey-Assaf. Under the agreement, Azaria submitted to the jurisdiction of New Jersey courts for disputes arising out of that employment. Ran Cert. Exh. A. Because, DAG argues, Azaria has misappropriated "proprietary trade secrets and methods in the internal management and operations of a marketing package targeted to the Jewish and Israeli communities" in connection with production of the HEYP directory, he has contractually subjected himself to this Court's jurisdiction. Plaintiff's Brief in Opposition to Motion to Dismiss ("Pl. Opp. Br.") at 4. Specifically, DAG asserts that DAG's proprietary "systems and methods include: (a) properly hiring Sales Representatives[;] (b) training Sales Representatives

---

[5] A court may not, of course, transfer a matter under § 1406(a) where it has personal jurisdiction over defendants *and* venue has been properly laid pursuant to 28 U.S.C. § 1391.

in DAG's sales techniques[;] (c) managing the Sales staff to work efficiently[;] and (d) managing the operations, including deployment of the sales force, coordination with production, and maximizing efficiency." *Id.* (citing Ran Cert. ¶¶ 37-58). With respect to HEYP, DAG proposes that Azaria's connections with New Jersey can be attributed to HEYP through an alter-ego theory because the HEYP entity is "closely related" to Azaria. *Id.*

Assuming, *arguendo*, that an appropriate claim-specific connection could be drawn between Azaria and New Jersey by virtue of the Dapey-Assaf employment agreement, subjecting defendants to suit in this forum would nevertheless be unreasonable under the circumstances. First, Azaria signed the employment agreement over fourteen years ago in connection with a job which he left the very next year. Second, the agreement concerned Azaria's employment with Dapey-Assaf, a predecessor entity twice removed from DAG. Third, HEYP was not a signatory to the agreement, and indeed was not even formed until approximately 12 years after Azaria left Dapey-Assaf. DAG argues that HEYP is "closely related" to Azaria and is thus subject to the employment agreement's forum selection clause, but the cases it cites presuppose that the closely related third party was actually in existence when the contract containing the forum selection clause was signed. *See* Pl. Opp. Br. at 12-13 (citing cases). The Court cannot agree that here it was foreseeable that HEYP would be bound by the Dapey-Assaf employment contract when HEYP was not created until over a decade later. Fourth, the asserted proprietary information underlying DAG's asserted basis for this Court's personal jurisdiction over defendants appears to be little more than commonsense principles of running a generic business.[6]

---

[6] The Court takes no view on the underlying merits of DAG's asserted claims against defendants for misappropriating DAG's alleged proprietary business model.

Under the circumstances, the Court rejects the proposition that when Azaria signed the Dapey-Assaf employment agreement in 1995, despite having no contacts with New Jersey during or after his employment, he willingly subjected himself to be haled into court here—in perpetuity—for any actions taken in connection with a business similar to DAG's. The Court finds the following: (1) that the burden on defendants to continue litigating in this forum would be significant; (2) that New Jersey's interest in adjudicating this dispute is slight in comparison to Georgia's interest; (3) that given the parallel state court litigation ongoing in Georgia, the interstate judicial system's interest in obtaining convenient and effective relief militates heavily in favor of litigating the entire matter in the same state; and (4) that the enforceability of any judgment of this Court against defendants would be tenuous at best. All of these factors indicate that subjecting defendants to suit here would be highly unreasonable.

In sum, Azaria signed an employment agreement 14 years ago with a different entity than DAG, and that employment lasted one year. To conclude that Azaria must now litigate in New Jersey—where he has had no actual business contacts of any kind—would contravene notions of fair play and substantial justice. Thus, the Court finds that personal jurisdiction over defendants is lacking.

### 2. *Venue*

As stated previously, HEYP alternatively argues that if the Court does not dismiss the action, it should transfer the case to the United States District Court for the Northern District of Georgia under either the § 1406(a) improper venue provision or under § 1404(a) convenience principles. Def. Br. at 9-11.

The Court has found above that it lacks personal jurisdiction over defendants, and thus concludes that venue is "wrong" under § 1406(a). "The concepts of venue and personal

jurisdiction [have become] essentially coextensive, and therefore, venue can be 'technically proper' when it 'complies with the applicable venue statute' but 'wrong' when there is 'some other procedural obstacle in the original court, such as a lack of personal jurisdiction over the defendant.'" *Lafferty*, 495 F.3d at 82 n.13 (quoting 17A Moore's Federal Practice, § 111.02 (Matthew Bender 3d ed. 2006)).[7] Thus, as is the case here, "a district is 'wrong' within the meaning of § 1406(a) whenever there exists an 'obstacle to an expeditious and orderly adjudication' on the merits." *Id.* (quoting *Dubin v. United States*, 380 F.2d 813, 815)). Accordingly, the Court holds that a transfer to the United States District Court for the Northern District of Georgia, Atlanta Division, is appropriate. Defendants concede that courts in that forum hold personal jurisdiction over them, *see* Def. Br. at 9-10; thus, this case could have been brought there.

The Court does not agree with defendants' position that a transfer (as opposed to outright dismissal) would result in an "unwitting[] contribut[ion] to a multiplicity of litigation" as a result of the ongoing parallel litigation in Georgia state court. Def. Br. at 11. The litigation ongoing in the state courts, while concerning the same underlying facts and occurrences as this action, is not identically postured, and, given plaintiff's tacit indication that it will re-file in Georgia if this Court dismissed the action, *see* Pl. Opp. Br. at 23, the Court finds that "[d]ismissal will serve no useful purpose" and that the absence of any statute of limitations issues makes a transfer the "most cost- and time-efficient disposition." *Id.*[8]

---

[7] The Court's discussion assumes without deciding that venue would be "technically proper" in this district absent the issue of personal jurisdiction. *See* 28 U.S.C. § 1391(b).

[8] Although it has not formally cross-moved, DAG argues in its brief that if the Court concludes a transfer is necessary, then a transfer to the United States District Court for the Eastern District of New York is the most efficacious transferee forum. Pl. Opp. Br. at 23. The Court disagrees. DAG has not shown—and in the Court's judgment, cannot show—that the Eastern District of New York is a forum any less improper than this district.

While it need go no further, the Court notes that even were it to conclude that *in personam* jurisdiction does lie over defendants by virtue of the 1995 Dapey-Assaf employment agreement (making a § 1406(a) transfer improper), it would transfer the matter to the district court in Atlanta under § 1404(a) in any event. "[T]he best approach for reconciling the ability of a court to transfer when venue is technically proper, but there is another barrier, such as a lack of personal jurisdiction, is to refer to both Section 1404(a) and Section 1406(a) for the power to transfer." Moore's Federal Practice, *supra*, § 111.02. The Court is persuaded that "[e]verything related to this action occurred in [Georgia]": all of defendants' alleged unlawful conduct occurred in Georgia, the distribution of the HEYP directory has begun and is ongoing exclusively in Georgia, and the vast majority (if not all) of the witnesses and material evidence are located there. *Jumara*, 55 F.3d at 882; s*ee also* Def. Rep. Br. at 18.[9]

Moreover, DAG recently entered the Atlanta market, signaling its intent to compete with HEYP there. Ran Cert. ¶ 6. This market entry is further evidence that this litigation should proceed in Georgia, and not New Jersey—where competition between the parties is non-existent. Finally, parallel litigation is currently ongoing in the Georgia state courts, solidifying that state's paramount interest in adjudicating this matter. To be sure, DAG's forum choice pursuant to the contractual forum selection clause must be given "considerable weight." *Jumara*, 55 F.3d at 882.

---

Defendants currently maintain no contacts with New York; DAG's only stated reason for transferring the matter to the Eastern District is that it "has an office in Kew Gardens, NY, and engages in substantial business activity there." Pl. Opp. Br. at 23. This is insufficient to show that defendants are subject to personal jurisdiction in that forum.

[9] DAG also invites the Court to permit DAG jurisdictional discovery should it find the relevant jurisdictional facts heretofore adduced insufficient to decide the question presented. Pl. Opp. Br. at 24. The Court declines the invitation. First, the parties have already conducted significant discovery in the matter (including Azaria's partial deposition, *see* Ran Cert. Exh. B). Second, DAG acknowledges that Azaria's only contact with New Jersey is through the Dapey-Assaf employment agreement, and does not suggest with "reasonable particularity" the possible existence of additional contacts with this forum. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003). Therefore, further jurisdictional discovery would be of no additional assistance here.

That choice, however, cannot inexorably bind defendants where, as here, they maintain no current contacts with New Jersey, the forum selection clause was signed almost fifteen years ago, and otherwise provides—at best—an attenuated connection with this forum. *Id.* at 880 (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988) (under § 1404(a) analysis, parties' forum selection clause is entitled to "substantial consideration" but is not dispositive)). Contrary to DAG's contentions, the "balance of convenience of the parties is *strongly* in favor of defendant[s]," and thus a transfer to the district court in Atlanta is appropriate. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotations omitted; emphasis in original).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that this matter should be resolved in Georgia, and that a transfer to that forum is appropriate. In ordering the transfer of this action, this Court expressly takes no view on its merits. Defendants' motion to dismiss [D.E. # 21] the amended complaint is **denied**. Defendants' alternative motion to transfer this action to the United States District Court for the Northern District of Georgia, Atlanta Division [D.E. # 21] is **granted.**

An appropriate order will issue.

/s/ Katharine S. Hayden

KATHARINE S. HAYDEN, U.S.D.J.